## THE PEOPLE v. JOHN C. CHAPMAN.

An indorsement of a negotiable promissory note is a signature to a written instrument within the meaning of the 2 R. S., 677, § 53, and obtaining such an indorsement by false tokens or pretences, is punishable under that statute.

Where, in an indictment for obtaining an indorsement of a note by false pretences, the note was set forth at length, and it thus appeared to have been made by the defendant, and payable to the order of the prosecutor, and there was no averment that the indorsement was made for the accommodation of the defendant, it was held that the indictment was defective for want of such averment, the presumption being, on the face of the note alone, that it was the property of the prosecutor at the time of his indorsement.

This case distinguished from that of *Fenton* v. *The People* (4 *Hill*, 126).

THE defendant was indicted in the Court of Sessions of Seneca county, for obtaining the indorsement, by false pretences, of Deming Boardman to a note.

The indictment, after the caption and the names of the grand jurors, proceeded as follows: " good and lawful men of said county, being duly sworn and charged, upon their oaths present, that John C. Chapman, late of the town of Seneca Falls, in said county, merchant, on the ninth day of November, in the year of our Lord one thousand eight hundred and fifty-five, at the town of Seneca Falls, in said county of Seneca, feloniously, unlawfully and designedly, did falsely pretend to one Deming Boardman, with intent thereby, then and there, to cheat and defraud the said Deming Boardman; that he, the

said Chapman, was, and had been previous thereto, in the business of buying and selling grain; that one boat load of barley, which he had bought and then owned, arrived in the city of Albany one or two days previous to that day; and that he then had two boat loads of grain on the canal on the way to Albany, and that he had at least one boat load more of grain in the storehouse of Wilcox and Squires, up Seneca lake; that he had barley and oats enough on hand and paid for to pay every dollar that he, said Chapman, owed; by means of which false pretences the said John C. Chapman did feloniously and unlawfully obtain from the said Deming Boardman, his, the said Boardman's, signature, as indorser, by indorsement upon and to a certain promissory note in writing, which said promissory note and indorsement are in the words and figures following, to wit:

$1000.     SENECA FALLS, Nov. 9, 1855.

One month after date I promise to pay to the order of D. Boardman one thousand dollars, at the office of Smyth & Gifford, in Albany, N. Y.   Value received.

No.     (Signed)

JOHN CHAPMAN.

Indorsed on the back thereof, 'D. Boardman,' with intent thereby, then and there, to cheat and defraud the said Deming Boardman." The indictment then proceeded to negative the said pretences, and concluded as follows: " to the great damage and deception of the said Deming Boardman—to the evil example of others—against the form of the statute in such case made and provided, and against the peace of. the People of the State of New York and their dignity."

The defendant pleaded not guilty and demanded a trial.

The trial came on at a term of the same court on the 18th day of November, 1857.

Before the district attorney had given any evidence upon the merits, the defendant's counsel moved that the indictment be quashed, for the reason that no offence is alleged in it, and

contended: 1st. That the obtaining of an indorsement is not within the statute. 2d. That it appears from the indictment that the note was made payable to Boardman's order, and it is not averred that it was an accommodation indorsement, or that the note was ever delivered to Chapman by Boardman. The motion was overruled by the court, which refused to quash the indictment.

The same motion was again made and denied at the close of the evidence on the part of the prosecution.

The defendant was convicted, and the case was brought to this court by *certiorari.*

*A. T. Knox,* for the defendant.

*J. K. Richardson* (District Attorney of Seneca county), for the People.

*By the Court,* WELLES, J. The point raised by the defendant's counsel, that the obtaining an indorsement of a promissory note by false pretences, is not within the statute, cannot be maintained. The act made criminal by the statute, is by false tokens or pretences to "obtain the signature of any person to any written instrument." An indorsement to a negotiable promissory note is a signature to a written instrument, within the meaning of the statute. This precise question has not, that I am aware of, been ever formally passed upon by this court. It is one, however, which might have been raised in a large share of the cases which have been prosecuted under the section of the statute in relation to obtaining signatures by false pretences. (2 *R. S.,* 677, § 53.)

The other ground taken by the defendant's counsel, in relation to the sufficiency of the indictment, is a much more serious one. The note set forth in the indictment is *prima facie* an instrument in writing evidencing an indebtedness to the amount expressed, by the defendant Chapman to Boardman, the prosecutor. It is payable to his order, and the presumption is, until the contrary appears, that it was the property

The People *v.* Chapman.

of Boardman. Unless, therefore, it sufficiently appears by proper averments, that the note was made by the defendant for his own benefit, and that he obtained the indorsement of Boardman with intent afterwards to negotiate it on his own account, and that Boardman, after indorsing the note, delivered it to the defendant, and that the defendant received it for that purpose—in other words, that it was an accommodation indorsement—the case made by the indictment is, that Boardman having taken the note in question, payable to his own order, for a debt due to himself from the defendant, was induced by the representations set forth, to indorse and deliver it back to Chapman.

It is contended, however, in behalf of the people, that the indictment does show that the indorsement was made for the accommodation of the defendant; that the allegation, that by means of the representations stated, the defendant did *obtain* from Boardman his indorsement of the note, implies a delivery of it by Boardman to the defendant with the indorsement of the former upon it. The case of *Fenton* v. *The People* (4 *Hill*, 126), is regarded by the counsel for the people as conclusive in support of this proposition. In that case, Fenton was indicted for obtaining the signature of one Rich to a bond and mortgage by false pretences. The bond and mortgage were charged to have been payable to one Wyckoff, and the indictment did not expressly aver their delivery to Fenton, the defendant; but it charged that the defendant did *obtain* the signatures of Rich to them. The court held the indictment sufficient. Nelson, Ch. J., in delivering the opinion of the court, said: "There can be no doubt that, to constitute the offence aimed at by this indictment, there must be not only a signing but a delivery of the instrument. The one without the other would harm nobody; but I am of opinion that the averment here made comprehends both. It is difficult to see how the signatures to the bond and mortgage could have been obtained by the prisoner, unless they were delivered to him. If kept by Rich after the signing, clearly they were not *obtained*. The word imports a delivery."

This authority proves, only, that where the averments in the indictment show a case in all other respects within the spirit and object of the statute, the allegation that the defendant obtained the signature, &c., is a sufficient averment of its delivery to him. But does it overthrow the presumption of law arising from the form of the note, that it was evidence of an indebtedness from the maker to the payee? It seems to me that it does not. There is no reason why the prosecution should be excused from a direct averment of the facts necessary to constitute the case one of an accommodation indorsement, or that the court should give to the word *obtain* an efficiency beyond what it necessarily possesses. The utmost that can be claimed for it in the present case is, that the note in question, with the legal presumption attached to it, was delivered by Boardman to the defendant. The legal inference from the transaction, as thus modified, is, that Boardman, holding the note of the defendant, payable to his, Boardman's, order, for a debt due to him from the maker, indorsed and delivered it, without payment, to the maker. Stopping here—and the indictment carries the case no further—the transaction, in my judgment, was not one contemplated by the statute. When the defendant was thus possessed of the note, it was of no efficacy in his hands, and it is impossible to see how Boardman, or any one else could, in a legal sense, be injured by it. If it should be said that although the note was of no validity in the hands of the defendant, or in the hands of any one else with notice, against Boardman, yet if the defendant had, under pretence that it was an accommodation indorsement, negotiated the note to a *bona fide* purchaser for value, the answer is, that the crime would consist, in that case, in the representation made by the defendant upon negotiating the note. Until then no harm, in a legal sense, would have been done. The note, as between the defendant and Boardman, would have been in fact canceled, and in every respect inoperative, and the mischief, if any had followed, would have been in the defendant's fraudulently giving it vitality by passing it off before its apparent maturity to a *bona fide* purchaser with-

out notice. But that would be a very different case from the one made by this indictment. If it was a case of an accommodation indorsement, as the counsel for the people contends, and as the evidence shows, it was easy to set it forth in that aspect by proper averments. The theory of the case on the part of the people, should be distinctly and unequivocally put forth in the indictment, and not be left to uncertain inferences.

If the foregoing view is correct, it is unnecessary to consider the other questions raised by the bill of exceptions and discussed upon the argument.

In my opinion, the conviction should be reversed and the proceedings remitted.

Ordered accordingly.

